**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 16-cv-02310-RM

JOSEPH SCHEIDELER,

    Appellant,

v.

STEPHEN BERKEN,

    Appellee.

_____

**OPINION AND ORDER**
_____

On September 13, 2016, appellant/defendant Joseph Scheideler ("appellant") appealed the decision of the U.S. Bankruptcy Court for the District of Colorado ("the Bankruptcy Court"), granting appellee/plaintiff Stephen Berken's ("appellee") Motion for Summary Judgment ("appellee's motion for summary judgment"). (ECF No. 2.) In his Opening Brief, appellant raised the following issues for judicial review: (1) whether the Bankruptcy Court erred in granting appellee's motion for summary judgment because appellant did not cause appellee's damages because he did not obtain money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud from appellee; and (2) whether appellee was entitled to summary judgment when he did not rely on any statements

allegedly made to him by appellant. (ECF No. 11 at 4.)[1] Appellee has filed a Corrected Response Brief (ECF No. 13), and appellant has filed a Reply Brief (ECF No. 15).

With this matter now being fully briefed, and for the reasons discussed herein, this Court REVERSES the decision of the Bankruptcy Court, and DENIES appellee's motion for summary judgment.

**I.  Background**

On July 13, 2015, appellant filed a petition for relief under Chapter 13 of the U.S. Bankruptcy Code. (ECF No. 10-1 at 6.) During the time period relevant to this case, appellant was an attorney. (*Id*. at 88, 96.) On October 26, 2015, appellee initiated an adversary proceeding against appellant. (*Id*. at 1.) Pursuant to appellee's Complaint, appellee sought to have a debt excepted, pursuant to 11 U.S.C. § 523(a)(2)(A) ("§ 523(a)(2)(A)"), from any order of discharge entered in appellant's underlying bankruptcy proceeding. (*Id*. at 5.) That debt is in the amount of $11,556.50, and appellee alleged that it stemmed from appellee's prosecution of a motion to disqualify appellant from representing a creditor in another bankruptcy case. (*Id*. at 6.)

On August 2, 2016, appellee filed his motion for summary judgment. (ECF No. 10-1 at 139-145.) Therein, appellee asserted, *inter alia*, the following. In a different bankruptcy case, a bankruptcy judge held a telephonic hearing. (*Id*. at 140.) During the telephonic hearing, "a male voice" presented the legal argument of a party represented by appellant. Appellee, who appeared in-person at the hearing, listened to the voice, and did not think it was appellant's voice. After the voice concluded speaking, appellee "queried the person on the telephone as to his identity," and,

---

[1] The Court uses the page numbers assigned by the CM/ECF system in the top right-hand corner of the relevant pleading, rather than any other page number that may appear at the bottom of said pleading.

after a short pause, a different voice said "I'm speaking … Joe Scheideler." (*Id*.) Appellee remained suspicious that someone other than appellant had spoken during the hearing, and decided to hire a professional audio engineer to perform a forensic analysis of an audio recording of the hearing. (*Id*. at 141.) After doing so, the engineer concluded that appellant had not made the pertinent legal argument during the hearing. Appellee then filed a motion to disqualify appellant from further involvement in the pertinent bankruptcy case. Thereafter, appellant stipulated to the fact that he had not made the pertinent legal argument during the hearing and that another person had attempted to impersonate him.[2] (*Id*.) A bankruptcy judge subsequently held appellant in contempt for his conduct during the telephonic hearing. (*Id*. at 141-142.) The bankruptcy judge also subsequently ordered appellant to pay appellee $11,556.50. (*Id*. at 142.)

On August 22, 2016, appellant responded to appellee's motion for summary judgment, and also moved for summary judgment in his favor. (ECF No. 10-1 at 156-158.) On September 6, 2016, the Bankruptcy Court entered an Order on Cross-Motions for Summary Judgment ("the Bankruptcy Court Order"), granting appellee's motion for summary judgment, and denying appellant's cross-motion for summary judgment. (*Id*. at 172-178.) The Bankruptcy Court adopted the factual statements made in appellee's motion for summary judgment because appellant did not identify any of the same as subject to dispute. (*Id*. at 172-174.)

The Bankruptcy Court then concluded the following. First, it was "clear enough" that appellant committed a fraudulent act in that he tried to deceive the bankruptcy judge for the pertinent

---

[2] Although not a part of the record and, accordingly, not relied upon as any part of the basis of this Opinion, the Court notes that the parties' briefs reveal that the "impersonator" was an employee of appellant's who was speaking because appellant was using the toilet, presumably tending to biological obligations rather than his obligation to the Bankruptcy Court.

3

bankruptcy case. (*Id*. at 175.) Second, it was "clearly established" that appellant committed an "actual" fraud, as appellant had claimed falsely that he had made legal argument before the bankruptcy judge, and thus, "the inference that [appellant's] false statement to the court was made with the intent to deceive the court is inescapable." (*Id*.) Third, it was no bar to appellee's recovery that appellant did not obtain money, property, services, or an extension, renewal, or refinancing of credit. (*Id*. at 175-176.) Fourth, appellee was the "direct target" of appellant's fraudulent act because appellant's misrepresentation was not only made to the bankruptcy judge, but also made to appellee "in direct response to his question concerning the identity of the individual who was presenting argument to the court at the hearing." (*Id*. at 176.) Fifth, in the absence of appellant's fraudulent act, appellee would not have incurred the expense of hiring an expert to investigate appellee's suspicions, and thus, that expense was a direct result of appellant's act. (*Id*. at 177.)

## II.     Legal Standards

The Bankruptcy Court's grant of summary judgment, including any purported factual findings, is reviewed *de novo*. *In re C.W. Mining Co.*, 798 F.3d 983, 986 & n.2 (10th Cir.2015). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also* Fed.R.Bankr.P. 7056 (making Fed.R.Civ.P. 56 applicable in adversary proceedings). A fact is material if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is genuine if a rational trier of fact could find for the non-moving party. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing this analysis, the factual record and any reasonable inferences therefrom are construed in the light most favorable to the non-moving party. *Id*.

**III.    Discussion**

Both parties cite to the same Tenth Circuit Court of Appeals case for purposes of explaining the elements of a false representation or actual fraud under § 523(a)(2)(A).[3] That case is *In re Young*, 91 F.3d 1367 (10th Cir. 1996). (*See* ECF No. 11 at 10; ECF No. 13 at 8.) The Court will get to *In re Young* in one moment. Before doing so, it is important to note that appellee does (perhaps unintentionally) throw some uncertainty over the test used in *In re Young*, even though appellee cites to that decision as "seminal." Notably, appellee cites to the Supreme Court's 2016 decision in *Husky Int'l Electronics, Inc. v. Ritz*, 578 U.S. ___, 136 S.Ct. 1581 (2016). Appellee asserts that, in *Husky*, the Supreme Court explained that "actual fraud," for purposes of § 523(a)(2)(A), means any fraud done with wrongful intent. (*See* ECF No. 13 at 8-10, 13.) Although appellee does not attempt in any way to explain how *Husky* might affect the test used in *In re Young*, appellee then asserts that the ruling in *Husky* means that "the formerly narrow reading of § 523(a)(2) need not be limited to a showing a Debtor need have a prior creditor/debtor relationship in order to find 'actual fraud.'" (*Id*. at 13.) Whether *In re Young* is an example of the "formerly narrow reading of § 523(a)(2)" is left conveniently unstated. In other words, perhaps understandably, although appellee very much implies it, appellee appears reluctant to state that *In re Young*, at least in part, has been overruled.

As this Court reads *Husky*, to the extent *In re Young* suggests that one test applies to all claims brought under § 523(a)(2)(A), *Husky* very much puts such a suggestion on troubled legal

---

[3] Even though § 523(a)(2)(A) provides for debts obtained by "false pretenses, a false representation, or actual fraud," as discussed in more detail *infra*, neither party affirmatively states that there is a different test for false pretenses, a false representation, or actual fraud. (*See generally* ECF No. 10; *see* ECF No. 13 at 8.)

5

grounds. That is largely because *Husky* said as much. Notably, the Supreme Court concluded that, because Congress amended § 523(a)(2)(A) by adding the language "actual fraud," "[i]t is therefore sensible to start with the presumption that Congress did not intend 'actual fraud' to mean the same thing as 'a false representation,' as the Fifth Circuit's holding suggests." *Husky*, 136 S.Ct. at 1586.

That being said, it is unnecessary for this Court to delve too deeply into the ramifications of *Husky* for this case. That is because *Husky* undoubtedly involved the "actual fraud" part of § 523(a)(2)(A). *See Husky*, 136 S.Ct. at 1585-86. This case, however, does not. Appellee's Complaint sets forth one claim for relief. (ECF No. 10-1 at 11-12.) That claim, brought under § 523(a)(2)(A), is premised exclusively upon appellant having allegedly made a "false representation." (*See id.*) Notably, appellee alleged that its debt was "incurred through the use of making a false representation to the bankruptcy court," that appellant's "false representation was made at a time [appellant] knew it was false," that appellant's "false representation was made with the intent to deceive," and that appellee "relied on the representations of an officer of the court (i.e., [appellant]), at the time the representation was made." (*Id*. at 12.)[4]

As much as *Husky* undoubtedly involved the meaning of "actual fraud" under § 523(a)(2)(A), it equally did not involve the meaning of "a false representation" thereunder. As a result, the Court finds that the test used in *In re Young* is still applicable to the specific claim appellee brought in his Complaint, as *In re Young* undoubtedly involved false representations. *See In re Young*, 91 F.3d at 1373 (stating that a person made "two false representations") (quotation omitted). That test requires a party to prove the following elements by a preponderance of the evidence: (1) "[t]he

---

[4] Not that it is relevant to the claim alleged in appellee's Complaint, appellee's motion for summary judgment confirmed that a false representation was the premise of his claim. (*See* ECF No. 10-1 at 144-145 (discussing appellant's "misrepresentation" or "false statement")).

debtor made a false representation;" (2) "the debtor made the representation with the intent to deceive the creditor;" (3) "the creditor relied on the representation;" (4) "the creditor's reliance was reasonable;" and (5) "the debtor's representation caused the creditor to sustain a loss." *Id*.

Although appellant cabins his arguments under two separate headings (*see* ECF No. 11 at 8-10), there are three issues raised in the Opening Brief. First, appellant made no false misrepresentations directly to appellee causing appellee to incur any debt at the time of the alleged misrepresentation. (*Id*. at 8-9.) Second, appellee did not rely on any of appellant's alleged misrepresentations in light of the fact that appellee hired an expert to prove that appellant was lying. (*Id*. at 9-10.) And, third, appellant did not make any misrepresentations to appellee with the intent to deceive appellee. (*Id*. at 10; ECF No. 15 at 7-9.)

The Court finds that appellant's first two arguments are either irrelevant or undisputedly refuted by the facts of this case. However, the Court agrees that the evidence is very much disputed as to whether appellant made any of the pertinent statements with the intent to deceive appellee. The Court addresses the arguments in turn.

First, the Court finds that it is entirely irrelevant whether or not appellant made any statement *directly* to appellee. That is certainly not an element of the test set forth in *In re Young*. Rather, the applicable element is that the debtor made a false representation. There is no requirement on the face of that element that the representation be made to anyone in particular. Here, it is undisputed that appellant made a statement—essentially, that he was the one speaking during the telephonic hearing—and that the statement was false. That is all the first element requires. Moreover, to the extent appellant's arguments in this regard relate to the fifth element of the *In re Young* test—causation—that element too does not require that a statement be directed at the creditor.

Instead, all that is required is that the creditor's loss be caused by the statement. As occurred in this case, it is not hard to imagine a loss caused by someone hearing another's statement. Although such a scenario may create problems with other elements of the *In re Young* test, it does not create a problem for the causation/fifth element. Finally, to the extent appellant's arguments in this regard can be construed as suggesting that a party must be a creditor *before* the false statement is made,[5] that again is not an element of the test or logically required by § 523(a)(2)(A). Notably, § 523(a)(2) used the words "obtained by" when discussing the type of debts that may be nondischargeable thereunder, which appears to envisage, at the very least, a situation where a party was not a creditor prior to the debt being obtained.

Second, the Court finds that, based upon the undisputed facts, appellee has established that he relied upon appellant's statement during the telephonic hearing. Appellant asserts that appellee could not have relied upon his statement in light of the fact that appellee hired an expert to investigate the accuracy of appellant's statement that he was speaking during the telephonic hearing. (ECF No. 11 at 9-10.) However, appellant's argument confuses reliance with belief. In other words, although appellee may not have believed appellant's statement, appellee certainly relied upon it in deciding to hire an expert to determine whether the statement was a falsehood. The Court, thus, agrees with the Bankruptcy Court that, in the absence of appellant's statement, appellee would not have incurred the expense of hiring an expert. Put simply, it is undisputed here that appellant made the statement that he was speaking during the telephonic hearing, that appellee heard that statement and queried it, that appellee retained an expert to determine whether appellant addressed the

---

[5] If it was not clear already, appellant, arguably, raises a number of different arguments in his Opening Brief, but deciphering them in an intelligible manner is not the simplest of tasks.

bankruptcy judge, and that appellee incurred costs and legal fees in prosecuting a motion to disqualify appellant. This Court agrees that those facts establish reliance, and appellant's poorly constructed arguments to the contrary in the Opening and Reply Briefs do not persuade the Court otherwise.[6]

Third, the Court finds that the Bankruptcy Court erred in finding that appellee was the "direct target" of appellant's statement because it is very much disputed whether appellant intended to deceive appellee. That much is clear from the words of the Bankruptcy Court Order. Notably, after finding that appellee was appellant's direct target, the Bankruptcy Court then stated that appellant's statement was not only made to appellee, but also to the bankruptcy judge. Construing the facts in the light most favorable to appellant, as the Court must, this finding presents the possibility that appellant may have intended to only deceive the bankruptcy judge. It is, of course, equally (if not more so) possible that appellant *also* intended to deceive appellee—appellant did after all respond to appellee's question—but that is not an indisputable result. A reasonable factfinder could quite easily infer that appellant only intended to deceive the bankruptcy judge. This is especially so, here, where so little of the context of the telephonic hearing is filled out in the record. At the moment, all that the Court knows is that appellee queried whether appellant was speaking and appellant stated that he was speaking. How a factfinder is meant to determine anything when it comes to intent from that, the Court does not know, let alone conclusively make a determination.

Added to this are further notable findings in the Bankruptcy Court Order. For example, the Bankruptcy Court found that appellant's statement "was made to deceive *the court* into believing

---

[6] The Court notes that, in the Opening and Reply Briefs, appellant does not challenge the reasonableness of appellee's reliance. (*See generally* ECF Nos. 11, 15.) Therefore, the Court does not further address that element.

…" and was "intended to persuade *the court* …", and, perhaps, most revealingly, that appellant "tried to *deceive*" the bankruptcy judge and it was "inescapable" that appellant's "false statement to the court was made with the *intent to deceive the court* …." (*See* ECF No. 10-1 at 175-176 (emphasis added)). Put simply, although the Bankruptcy Court may have reached the conclusion that appellee was appellant's direct target, the Bankruptcy Court's other statements reveal something very different.

The Court further notes that appellee's Complaint is not a model of clarity with respect to whom appellant's alleged intent to deceive was directed. Notably, the Complaint only alleged that appellant's "false representation was made with the intent to deceive." (ECF No. 10-1 at 12.) As the Court stated *supra*, that allegation is clearly established by the facts of this case. In other words, in stating that he was speaking during the telephonic hearing, appellant intended to deceive. But, that does not resolve the second element under *In re Young*, as that case requires that the debtor made the representation with the intent to deceive *the creditor*. *See In re Young*, 91 F.3d at 1373. As discussed, whether appellant intended to deceive appellee is very much open to debate, and, based upon the facts presented, can only be resolved at trial because it is an open question whether appellant intended to deceive just the bankruptcy judge or whether he intended to deceive *both* the bankruptcy judge and appellee.[7]

As a result, the Court finds that a genuine issue of material fact exists as to the second element under *In re Young*, and thus, appellee, as plaintiff below, was not entitled to summary

---

[7] To be clear, the Court finds no problem with a determination in favor of appellee in the event that a factfinder determines that appellant intended to deceive *both* the bankruptcy judge and appellee. *In re Young* requires an intent to deceive the creditor; it does not require an intent to deceive *solely* the creditor. Otherwise, a debtor could avoid nondischargeability under § 523(a)(2)(A) merely by trying to deceive multiple people.

judgment on his § 523(a)(2)(A) claim. Accordingly, the Court REVERSES the Bankruptcy Court Order, and DENIES appellee's motion for summary judgment. The Court REMANDS for a trial to be held on the second element of the test set forth in *In re Young*—specifically, on whether appellant intended to deceive appellee in making his statement during the telephonic hearing that he was speaking—as that is the only element of the test upon which both a valid argument and genuine issues of material fact have been presented.

**SO ORDERED.**

DATED this 3rd day of August, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge